The next case today is Leon Xu v. Merrick B. Garland, et al., Appeal No. 19-1044. Attorney Williams, please introduce yourself for the record and proceed with your argument. Good morning, may it please the Court. My name is Attorney Kimberly Williams with Ruben Pomerleau PC. I represent the petitioner, Appellant Li-Quan Xu. May I please reserve two minutes for rebuttal? Yes, you may. Good morning, Your Honor. This petition presents three separate issues of first impression for the Court, as we've argued in our numerous briefings. The first of which is that contrary to the use of vexatious litigation tactics by the respondents, as we've argued in our briefs, the Court still contains jurisdiction to hear this petition and should not condone the gamesmanship utilized by the government to cancel... You know, it doesn't help to use terms like gamesmanship. We're faced here with a statutory interpretation question, which seems to be, if there is no removal order, does this Court have any jurisdiction? So, could you reframe your first point in those terms, please? Sure, Your Honor. I was just getting to the point of that particular issue. In that issue, we argue that the Department of Homeland Security, which is the agency that both issued and then tried to un-issue the farro, does not have the carte blanche authority to cancel it. Counsel, may I ask a predecessor question? Sure. If Congress intended us not to review these cases, how can we get to the question of whether there was any authority to do this or not? Well, first off, the regulations regarding the issuance of the farros are very... No, no, no, no. You've totally missed my point. Apologies, Your Honor. If Congress has barred us from hearing cases in the absence of a final order of removal, your argument seems to be, oh, the final order of removal wasn't valid for a variety of reasons. But my question has to do with whether we even have jurisdiction to look at those issues. And I don't recall your presenting an argument as to why we would. The court would have jurisdiction to hear these arguments. At the time the petition was initially filed, it did have jurisdiction under 8 U.S.C. 1252 in order to review whether or not the farro was proper to begin with. Okay, so what is it in the statute that precludes review, that limits the time period to the time when the petition was filed? So there's two points to this argument. The first point is that normally you would need to file it within 30 days of the farro being issued. However, we argued in our brief that we asked that that be equitably told due to unclean hands by the government in how they went about the issuance of the farro in the first place. I see. And there is a doctrine which this court has never decided one way or the other about equitable jurisdiction being used to extend time frames. We have no view from the agency because this issue wasn't exhausted for adequate reasons. But you're saying that our equitable jurisdiction would allow us to override a clear congressional command? I think that it's an issue that the court needs to consider. In the U.S. District Court in 2017 in the walks case that we discussed, in that case they presented that. Okay, counsel, I understand the argument. I believe you said you had a second argument? Yes. So the first argument is that we asked for the equitable tolling. The second is that even if the court deems that the equitable tolling argument is not a viable argument under these circumstances, nonetheless, the petition itself was filed five days before the completion of the withholding only proceedings. And therefore, under the ripening doctrine, the court could still take jurisdiction over this case because the issues presented in this case have... No, no, no, that's a separate issue as to whether your filing this was premature. And so let's assume, arguendo, we're going to excuse the prematurity, okay? Nonetheless, we're faced with this statutory bar. Yeah, and so this is an issue that really hasn't been decided by too many courts nationwide. But in our briefing, as we argued, and also in the amicus brief that was provided by the ACLU as well on this issue, there are two main courts that have taken up this almost identical set of circumstances. One was in the Third Circuit. I'm sorry, counsel. I've just assumed in your favor that we would forgive the prematurity of your notice of you were filing the review. So why are we talking about this? Because the government has argued in their brief and actually spent the most substantial portion of their brief arguing that the issue regarding equitable tolling or whether ripening or anything... They had to respond to arguments that you made. So I'm back to my, we have a flat statutory bar here. And as I understand it, your arguments are, despite that, we can look at whether the agency had the authority. And as to any timing issues, we should read the law in your favor. So I have one other question for you, please. An objective observer of this situation might think your client was in much better shape because the final order of removal has been vacated. This time, she gets a full hearing before an immigration judge. She remains in the country, not in detention. During the duration of that, she can make arguments that she could not otherwise have made. So why are we here? If your client is better off, why are you here? So we're here, Your Honor, because in many respects, she's not better off. And your questions and your concerns actually also go to the issue of mootness of the petition before the court because our client has been prejudiced. And like all the issues that we have to litigate previously during her withholding only proceedings, she's going to have to litigate all those over again. There is the strong likelihood that everything is going to be subject to recurrence. Plus her status of her decaf. I'm sorry. OK, so we have this statutory bar. We also have mootness. You're saying the government gets an advantage because you've shown your hand before the immigration officer. Is that what this comes down to? Not at all, Your Honor. And I'm also not conceding that there is a statutory bar. This court has jurisdiction. OK, Judge Barron. Let's put aside the equitable tolling point for a second under 1252. If I understand your argument with respect to whether the 30-day clock that 1252 sets forth was complied with or not, is your simple point that the clock starts to run only at the end of the withholding period when the withholding proceedings are over as a statutory matter, or is that not your argument? That's not necessarily our argument. The courts are actually split on this issue as to whether you must file first within the 30 days or whether you must file first within the 30 days after the issuance of the faro or within 30 days after the conclusion of withholding-only proceedings. And this court hasn't decided either way on that issue. So we're making alternative arguments here. Yeah. So run the – and you think you can win under either argument? I do, Your Honor. Suppose the statute requires you to file within 30 days of the issuance of the faro. That was not done, right? That's correct, Your Honor. But as we argued in our brief, the reason that wasn't done was because of significant due process violations by the agency. I'm saying that's an equitable tolling point, right? Yes. Okay. Put aside the equitable tolling point. Yes. The only way you can win if we say you cannot assert equitable tolling is if the 30-day clock does not start until after the withholding proceedings are over. Is that right? Putting aside the equitable tolling argument, yes, that would be the alternative argument we would have to make. Yeah. And now that would seem to put people like your client in a potentially very problematic position because they would be unable to challenge the faro if they also wish to pursue a collateral argument in the immigration courts about asylum or withholding. Even though during the whole pendency of those proceedings, they might have a very strong argument that the faro was simply unlawfully entered because it relied on an invalid predicate conviction. So that would seem to me a quite troubling rule if we actually read the clock not to even start such that you could challenge the faro until your collateral proceedings on withholding or asylum ended. That's correct, Your Honor. And in fact, that's pretty much what happened in this case with our client. And in fact, at the end of her withholding only proceedings… That suggests that in order for you to win, it may be that legally this isn't available. But a much more practical regime would be as if you must challenge the faro within 30 days. And then you would say, but if there's some reason why you weren't able to do that, that equitably should excuse it, then you should have equitable tolling. But I don't quite see the reason to read the statutory scheme to preclude any challenge to the faro until the withholding or asylum proceedings are over. That would seem to be a lot of downstream consequences that would seem very unfair to a number of petitioners. I agree, Your Honor. And part of our argument with this is that the petitioner was not properly advised of her rights. So then let me go to the equitable tolling part. I had thought we have held that with respect to 1252, outside the faro context, that there is no equitable tolling that can excuse the statutory deadline. Isn't that right? I was not able to locate a particular case that directly addressed the issues of this particular case, other than the facts that were in the walks case in the district court where they talked about the consequences. You didn't quite answer my question. I had thought outside the faro context, in other words, when you're dealing with an ordinary final order of removal through an IJ process, I had thought we had said there's no equitable tolling under 1252 with respect to that 30-day deadline. Isn't that right? I'm not aware of any case of that particular. I know the court has often left for another day many issues of equitable tolling in the immigration context. So you think that in general, 1252 and equitable tolling is an open question in our circuit, not just related to faro, but with respect to any final order of removal? I do believe so, Your Honor. I think especially when the government has unclean hands, whether it was through incompetence or malfeasance, whether it was direct or indirect, if a petitioner is not appropriately advised of their due process appellate rights, that I think that that does affect their ability to properly comply. And I think that needs to be considered, given that this has the opportunity to recur in a number of instances. Ms. Williams, Judge Barron's questions are very interesting to me. I would just like to play it out a little bit more. Let's assume there is a 30-day filing deadline for the faro, and you meet that deadline. But then the government withdraws the faro and institutes instead full proceedings. And the agency says to the court, why don't you just stay all proceedings and let us work through these other issues? You might say to the agency, gosh, we have our petition for review from the faro, and we want the agency to stay proceedings. Here, the agency has gone forward and has not added a new basis for removal, but has said you'll get a hearing where you get to apply for asylum and withholding of removal. So, would you be able, at the end of the new proceedings, to file an amendment to your petition for review? So, two points, Your Honor. To the first part, we would not concede that the government would have the statutory or regulatory... We know that, please. But specifically, the point that you're raising is that after the faro was issued, and if we timely file within 30 days, our argument is that the government wouldn't have the opportunity to even put them in 240 proceedings after the issuance of the faro. They would need to terminate... Yes, but the government has taken the opposite position here. And my question to you had to do with whether you could then either file a new petition for review or amend your old one. So, theoretically, presuming what you're saying, that they have the authority, which we do not concede, to put her back into 240 proceedings, and if we follow through, there is technically the opportunity to file a new petition for review. However, the concern is that... Especially what happened in this case. After withholding only proceedings resulted in the grant of deferral under the Convention Against Torture, the government waived. We also waived because our client was going to be subject to mandatory detention throughout the entire period while she appealed. So, in other words, she would have to give up a right that she was granted. She was granted protection, and then would have to appeal that further. So, it would put her in a very precarious position that she has a final order of removal granting her relief to not be sent back to her home country, but in order to challenge simply the aggravated felony finding, because they're saying she's not eligible for certain forms of discretionary relief, it puts her in a very precarious position. And this whole process got started by finding... Okay, thank you. Thank you. Thanks. Any further questions from the panel? No. Thank you. Attorney Williams, please mute your audio and video. Attorney Pergolesi, please unmute your audio and video, introduce yourself for the record, and proceed with your argument. Good morning, Your Honors. Sarah Pergolesi for the Respondent. I'd like to start by noting that I agree with the petitioner that this is the first circuit to decide whether DHS has the authority to cancel a farro with the full arguments of the government. Before you get into the question of whether you can cancel the farro, suppose we disagree and we say you cannot cancel the farro. What do you think should happen in this case? If you disagree that DHS does not have the authority to cancel the farro, I would still suggest that the court does not have the record sufficiency to determine the criminal issue. Firstly, because the terms within the aggravated felony relating to prostitution are ambiguous. For me, the arguments that the petitioner has made, independent of this dispute over whether the farro can be canceled, that as far as I can tell, the government is taking no position on this proceeding. Do you think they're entitled to equitable tolling? First, I'd just like to note that this isn't a good vehicle for these equitable tolling and ripeness issues. That's my question, because I read your brief, and I can't tell. Does the government think that they can assert equitable tolling? I think they can assert it, but I'm not sure that they've proven it. I don't think they've proved that they're diligent. Does the government have a position as to whether they're entitled to equitable tolling, and have you argued for that in your brief to us? No, no and no, and I would agree that I'm not aware of any cases. Does the government have a position as to when the 30-day clock starts, and have you argued that in your brief to us? Not in our brief again. It's unclear whether ripeness... Does the government have a position as to whether the predicate conviction can sustain the furrow, and have you argued one way or the other for that in your brief to us? We've argued that it's an open question and that the board should be able to determine the contours of this aggravated felony provision. That would only be available for the board to do if we were in a 240 proceeding. That's true. If we're not in a 240 proceeding, does the government have a position as to how we're supposed to answer that question? If the court were to find the furrow is final and that they decide this issue de novo, we don't have a position on whether that crime is an aggravated felony. And so what do you think we should do in an appeal in which the government takes no position on any of those issues, and the other side argues vigorously for us to resolve them all in our favor? What would you like us to do? Well, I think, again, that is a really good question, Your Honor, and it's emblematic of our positions that we do articulate. And that is that... I'm asking because I have a practical problem, which is that if I don't agree with the ones on what you would like us to decide on, what am I supposed to do if I disagree with you on them? What does the government want us to do? Are you waiving your arguments on those? If you're not waiving them, how are you not? Counsel, let me... There is an alternate basis to address this case on lack of jurisdiction grounds that has nothing to do with your agency's withdrawal of the furrow and whether we can review that or not. And the alternate basis is, no, they're not entitled to equitable tolling, and no, they did not timely file. And so we don't need to get into these other issues. There's something to be said for not getting into the other issues, because in the meantime, maybe the BIA can say a few things. And so the question is, although you didn't argue these points in your brief, I had sort of assumed the government's position was, well, all right, it's a fallback. You are now being asked whether you are, on behalf of the government, waiving those fallback arguments.  If I can make some arguments about the fallback arguments without having fully briefed them. The equitable tolling issue... You see, the problem is that the situation that you create here is that rather than the government laying out its arguments so they could then be responded to by petitioner, you don't say anything in your brief, even though they're developed by petitioner. And now, after petitioner has already briefed the case, you'd like to now make the government's arguments in response. Well, we wouldn't let a petitioner do that. So why should the government be able to do it that way? It's not as if you weren't on notice of this jurisdictional question. And yet, rather than engage with it, you just choose the issues you want to argue about. I don't see why that's an appropriate way for the government to be briefing a case. I understand, Your Honor. But it is our position that the finality is a better position. I mean, it's a more fulsome reason for the court to find that it lacks jurisdiction in this case. But I understand the concerns, and I'm trying to respond to them. This court so far has assumed the timeliness... Excuse me. I want to go back to Judge Barron's issue about First Circuit precedent, about equitable tolling being unavailable, at least as to certain types of challenges. In truth, I probably should have been better prepared on that. I am not. Do you agree with him that that is our law? I also should be better prepared on that issue. And I'm not aware of any case, but I did not explicitly look for them. Again, the only, at least with respect to this Farrow issue, the only sort of time this court has considered timeliness has been in two fairly recent decisions. First, O'Riordan, which we cite in our brief. And then additionally, a 2019 case... Three minutes, counsel. ...Sanabria Morales, in which the court assumed timeliness in a case like this, or sort of like this, but a little unlike it in that the ripening issue wasn't at stake, but in which a petitioner filed their appeal after withholding-only proceedings concluded. And as I understand, Judge Barron, your question, I'm not sure we have a position at this moment whether one can concurrently have the availability, if there's a timeliness requirement after the Farrow was issued, as well as an ability to file timely after the withholding-only proceedings conclude. And separately, there is the issue of ripeness in this case, in which the PFR was filed prematurely if the clock starts at the conclusion of withholding-only proceedings, but it was filed untimely and then perhaps eligible for equitable tolling if the clock starts only after the issuance of the Farrow. And so, as you can see, these issues are extremely complicated, and the court need not address them in this case because... But that doesn't work that way. We have to address them if we disagree with you. So I understand you'd like to address that issue, but that's a little bit of a box you put the court in. If you just decide, well, then it's so hard, how would you figure it out? We have to be able to decide what we think are the right issues. I understand, Your Honor. There is, in your brief, this citation to Riordan and, I think, Sanabria, and there is some suggestion of ripeness slash mootness made in your briefs, correct? Yes, Your Honor. Thank you. And I guess just the most practical point I'd like to make is that the petitioner in this case has basically said that she was prejudiced because she didn't get exactly what she has now and exactly what she will get if this court agrees with all of her points and grants the petition for review and finds the Farrow, if final, is invalid. And that is an opportunity to apply for asylum, to apply for other forms of collateral relief and protection. Isn't it true that if she wins on the merits in this petition, she is at no risk of the order of removal on this basis being entered in those 240 proceedings, correct? Yes. Yeah. Well, that's an advantage for her going into the 240 proceedings because that means in the interim she can apply for asylum knowing that she's not going to be tagged with the aggravated felon and all those things that would get in the way of her being able to do that. She'll have a binding judgment protecting her from that. She'll have it now. That's true. DHS hasn't pursued that line of removability or even ineligibility for asylum. That's true. She's better off now. I understand what she's all time counsel. May I finish my point? Yes. I guess my main contention there, Your Honor, is just that she's also argued that she's been prejudiced because of this time and litigation. But at the same time, she'll be pushed even farther back if this court does issue an opinion. And she is now no longer subject to the final order, but arguably possibly also not properly in 240 proceedings that are ongoing and on the calendar. And so proceedings may be initiated anew and she would still litigate these issues and still apply for relief. Just one question, which is because I know you want to argue about the cancellation of removal, and I was not making it easy for you to do that. So I want to make sure you get a chance to do that. Right. I do. Thank you. With respect to the cancellation of removal. If I disagreed with you that the regulation you rely on gives you the authority to cancel the removal order once it's been entered. I know there's a sentence in your brief that says you nonetheless have the inherent authority to cancel it. But if I'm reading correctly, the authority that you then cite in support of that, none of it specifically refers to your ability to cancel as opposed to you to simply give it no effect. The reason that's significant to me is if you could cancel it, we lose jurisdiction because there's simply no order. If you simply can give it no effect, we can then assess whether it's been mooted, which is quite a different inquiry. So which of the two positions do you think the authority supports? That's a very good question, Your Honor. And I agree with you that if it were just to be to cancel it, that would essentially be DHS's authority to not affect an order of removal that would still exist. And so, again, because this is the first circuit to address these full arguments that don't rely solely on the Council's regulation. Yeah, all right. That's where you opened. I'd like to pursue the cancellation of removal. If I disagreed with you about the regulation, I understood your fallback position to be we nonetheless have prosecutorial discretion to do a number of things, which would include both of the alternatives that Judge Barron said. It is true the authorities we cite go to different exercises of prosecutorial discretion. But nonetheless, we maintain we have prosecutorial discretion to do what we did here. Yes, Your Honor, and I would very briefly because I was ramping up and I'm sorry that I didn't say it quickly enough, but I would like again, because this is the court's first opportunity to have these full arguments. I would like to refer to another part of the regulations that I candidly did not find or cite in my brief. And that is 8 CFR 103.5A5. And that 103.5 are regulations relating to both DHS and USCIS's authority to reopen and reconsider administrative decisions. And within the A5 is the section that DHS on its own motion may reopen and reconsider. And in the event that the action that DHS makes is favorable to the applicant, the act of reopening and the action that changes their decision can be done in one motion in one action. So essentially the cancellation is that. Under that reg, who has to do that? It just says service officer. That reg doesn't explicitly directly refer to administrative removal under Section 238 of the INA, but it also doesn't specifically exclude those actions. OK, now, in fairness to your opponent, I want you to file a Rule 28J letter calling this to the attention of the court and your opponent will have 10 days thereafter to respond to the letter. Of course, Your Honor. I'm sorry I didn't do it earlier. I assumed just because it wasn't a new regulation, obviously, that I didn't have authority to file it. OK, thank you. Thank you. Yeah. Attorney Pergolosi, please mute your audio and video. Attorney Williams, please unmute your audio and video. Judge Lynch, with your permission, Attorney Williams may proceed with the rebuttal time. Yes, please. Hi, Your Honors. So back to the point that was made earlier about whether or not the issue could be raised about mootness that my sister counsel was addressing, I would argue that if in the alternative you guys find that there's no effect to the order and then you have to determine mootness on this particular issue, that as briefed in the amicus brief as well as discussed in ours, that there are many issues that have the potential for recurrence, i.e., whether or not the conviction that the petitioner admits she was convicted of, but we disagree that it's an aggravated felony, this has the issue to be repeated again. OK, yes, you did make that argument in your briefs. Thank you. And then also I would just argue that, you know, to Judge Barron's point earlier that there are a number of issues that we put in our reply brief that, you know, it's unfortunate that the government focused so much on whether or not they had the jurisdiction to cancel the file that they didn't properly view it. And the petitioner has been prejudiced. This case literally has been pending with this court since January of 2019. The government not only asked for an extension of time to file an amended appendix, they also then filed an extension of time to file a brief for this case, and two days before their brief was... Now, counsel, the argument is prejudice stems from the duration of the proceedings, correct? It stems from the duration, but also the fact that she was subject to mandatory detention because of this farrow that was issued. Was there a period of time prior to the cancellation of the farrow in which she was released from mandatory detention? The moment she was released, Your Honor, was the day she got granted DCAT, and the government waived that day. And we were told that if she did not waive, she would stay detained while we appealed this case. And when was the farrow canceled in relationship to those events? The farrow was canceled nearly 17 months after her release. Approximately 17 months after her release. Her DCAT decision was in January of 2019 on January 15th, and then the farrow itself was canceled on June 8th of 2020. So this matter was pending with the court for 17 months before the government deemed it necessary to try to cancel the farrow at that time. But she was not in detention during that period, correct? Not at that time, because she had been granted relief from the court, which prevented the government from effectuating her removal order. That's correct. And so she was not at risk of mandatory detention, nor was she in mandatory detention during that 17-month period. I would argue, Your Honor, that she wasn't in mandatory detention, but the fact that she wasn't at risk, I would not concede that, because technically under the statute, they can continue to hold someone who has been granted DCAT in detention for a period of time that only through habeas-type petitions could you request for their release. Yes, so if the government had, contrary to its position it took, put her into mandatory detention, you would have had a habeas action, correct? Yes, Your Honor. Okay, thank you. Thank you, Your Honor. If there's no further questions, we rest on our briefs. Okay, thank you. That concludes argument in this case. Attorney Williams and Attorney Pergolese should disconnect from the hearing at this time. The court will now take a three-minute recess.